The STATE of Ohio, Appellee,

v.

SHANKLIN, Appellant.

[Cite as *State v. Shanklin,* 185 Ohio App.3d 603, 2009-Ohio-6843.]

Court of Appeals of Ohio,
Fifth District, Licking County.

No. 2009 CA 00074.

Decided Dec. 22, 2009.

Kenneth W. Oswalt, Licking County Prosecuting Attorney, and Earl L. Frost, Assistant Prosecuting Attorney, for appellee.

Dennis C. Belli, for appellant.

HOFFMAN, Judge.

{¶ 1} Defendant-appellant, George A. Shanklin, appeals his conviction and sentence entered by the Licking County Court of Common Pleas on one count of grand theft, in violation of R.C. 2913.02(A)(3), and one count of passing bad checks, in violation of R.C. 2913.11(B), following a jury trial. Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE CASE AND FACTS

{¶ 2} On October 30, 2006, the Licking County Grand Jury indicted appellant on the aforementioned charges. The matter proceeded to jury trial on April 21, 2009.

{¶ 3} The following evidence was adduced at trial. Michael Fox, a real estate developer, testified that he occasionally invests money in other businesses. Fox stated that appellant had been referred to him through another individual, who had been given his name through Fox's brother. In August 2005, appellant approached Fox about a 30-day loan in the amount of $35,000, with which he planned to expand his dry-cleaning business.

{¶ 4} Appellant offered an accounts receivable from a purchase order as collateral for the loan. The purchase order was issued under the name of George Shanklin Enterprises, as the seller, and identifies Privacywear, Inc., of Corona, California, as the buyer. Carolyn Jones is named as the contact person for Privacywear. Pursuant to the terms of the purchase order, Privacywear was buying merchandise described as "point-of-sale" displays, laser scanners, and receipt printers. The merchandise was scheduled to be shipped by DHL, a package courier service, and a partial shipment of samples previously had been shipped via DHL under a certain tracking number. The total amount due to George Shanklin Enterprises under the purchase order was $75,280.

{¶ 5} Fox agreed to loan appellant $35,000, at the rate of 24 percent interest for a 30–day term. The parties executed a nine-page combined loan agreement and cognovit note on August 8, 2005. The document identifies PVCR, Inc., an Ohio corporation, as the lender, and appellant, individually, and George Shanklin Enterprises as the borrowers. The purchase order from Privacywear is listed as security for payment of the loan. Paragraph one of the written loan document reads: "The lender agrees to loan the borrower the principal amount of $43,000." The loan agreement does not specify an interest rate. The cognovit note, however, specifies $43,000 as the principal amount with a 24 percent interest rate per annum, and an $8,000 loan-origination, processing, and document-preparation fee.

{¶ 6} When appellant received the loan, he presented Fox with two checks, drawn on the bank account of George Shanklin Enterprises, and payable to Fox personally, rather than PVCR. The two checks, one in the amount of $35,000 and the other in the amount of $8,750, were post-dated September 7, 2005. Fox testified that he presented the two checks to appellant's bank approximately four or five days after September 7, 2005. Fox was advised by the bank that the checks would not clear. He contacted appellant, who requested an additional two weeks to make good on the checks. After the two weeks had passed, Fox deposited the checks into his own bank account, but they were returned for insufficient funds. Fox sent appellant a ten-day notice of dishonor via certified mail. The notice was returned to Fox as "non-servable."

{¶ 7} Thereafter, Fox decided to investigate the validity of the purchase order. He tracked the partial shipment of samples allegedly sent to Privacywear via DHL, but found that the tracking number corresponded to a five-pound package shipped to a company in New York, not the 65-item shipment to California-based Privacywear. Fox also learned that appellant did not own the $500,000 home he purported to own. Fox concluded that the whole thing was a scam and filed an offense report with the Sheriff's Office.

{¶ 8} Detective Kyle Boerstler of the Licking County Sheriff's Department testified that in 2005, he was assigned to the patrol division, handling calls. Boerstler recalled that he was dispatched to Fox's business in reference to a bad-check call. After speaking with Fox, Boerstler contacted appellant. Appellant acknowledged that he received the loan from Fox, indicating that it was a business deal, and conceded that the repayment checks he gave to Fox could not be cashed due to insufficient funds.

{¶ 9} Detective Tom Brown of the Licking County Sheriff's Department recalled that in 2005, he was working as a general case detective. Detective Boerstler forwarded the case to him after taking an initial report. After reviewing Detective Boerstler's case file, Brown contacted Carolyn Jones, the contact person at Privacywear in California. According to the detective, Jones was unable to provide him with any information that indicated that the purchase order was legitimate or that the sale was actually going to transpire. The detective also investigated the DHL tracking number for the samples appellant allegedly shipped to Privacywear. The tracking number did not correspond to the sample shipment. The tracking number corresponded to a shipment of debit cards to New York.

{¶ 10} Detective Brown contacted appellant, who acknowledged that he had borrowed money from Fox. Appellant did not dispute owing the money to Fox and was aware that the checks he had previously written did not clear the bank due to insufficient funds. In 2008, after charges had been filed, appellant sent Fox two checks, totaling $7,000.

{¶ 11} After hearing all the evidence and deliberations, the jury found appellant guilty of both charges. The trial court immediately proceeded to sentencing. The trial court merged the convictions, sentenced appellant to a maximum prison term of 18 months, and ordered him to pay restitution in the amount of $27,500, plus a $5,000 fine.

{¶ 12} It is from this conviction and sentence that appellant appeals, raising the following assignments of error:

{¶ 13} "I. Defendant-appellant was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution as a result of the following errors by trial counsel: A) making prejudicial remarks in opening statement, implying the defendant would testify, and minimizing the state's burden of proof in the case; B) failing to object to inadmissible hearsay which constituted the state's only evidence on the essential elements of fraud, deception, and criminal intent; and C) failing to challenge false and misleading testimony by the investigating detective.

{¶ 14} "II.   The trial judge deprived defendant-appellant of a fair trial and his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and violated the Ohio rules of evidence by:  A) improperly restricting defense counsel's cross-examination of the alleged victim, and B) demonstrating judicial bias and hostility toward defense counsel during his cross-examination of the alleged victim.

{¶ 15} "III.   Defendant-appellant's convictions for theft by deception and passing a bad check are not supported by evidence sufficient to satisfy the requirements of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution;  or alternatively, are against the manifest weight of the evidence."

## I

{¶ 16} In his first assignment of error, appellant raises a claim of ineffective assistance of counsel.

{¶ 17} A claim of ineffective assistance of counsel requires a two-prong analysis.   The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant.   The second prong is whether the appellant was prejudiced by counsel's ineffectiveness.   *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.   In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential.   *Bradley* at 142, 538 N.E.2d 373.   Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable professional assistance.   Id.

{¶ 18} In order to warrant a reversal, the appellant must additionally show that he was prejudiced by counsel's ineffectiveness.   "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel."   *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell* (1993), 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180.

{¶ 19} The United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a

result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 20} Appellant contends that defense counsel was ineffective in three respects. First, defense counsel made a promise during opening in which he implicitly told the jury that appellant would testify. Next, counsel failed to object to inadmissible hearsay. Finally, counsel failed to challenge the false and misleading testimony of Detective Brown regarding his conversation with Carolyn Jones.

{¶ 21} We first address appellant's assertion that defense counsel was ineffective for failing to object to numerous incidents of inadmissible hearsay. Specifically, defense counsel failed to object to the testimony of both Detective Tom Brown and Michael Fox, regarding the legitimacy of the Privacywear purchase order and the tracking information on the purchase order, as well as the testimony of Fox indicating that the prices of the items on the purchase order were at least twice the normal selling price.

{¶ 22} We find that defense counsel's failure to object to the aforementioned fell below an objective standard of reasonableness. Neither Detective Brown nor Michael Fox possessed any personal knowledge regarding the validity of the purchase order, yet each witness testified as to information he had obtained through a third-party source, who did not testify at trial. Further, Detective Brown and Fox testified that the courier tracking number on the purchase order was for debit cards, not the point-of-sale merchandise listed on the Privacywear purchase order, and that the destination of that package was a buyer in New York, not Privacywear, which is located in California. Fox testified that he conducted a search with DHL and talked to people. Detective Brown did not identify the source of his information. Neither witness worked for DHL and did not profess any familiarity with the manner in which DHL maintains its tracking system.

{¶ 23} Although the tracking records of a private courier service may be admissible under Evid.R. 803(6), the business-records-hearsay exception, the state is required to lay a proper foundation. Herein, the state made no attempt to produce a copy of the tracking records kept in the ordinary course of DHL's business or to authenticate the same through a qualified individual. The state merely elicited testimony from Detective Brown and Fox about the contents of records that had not been admitted into evidence.

{¶ 24} We also find that defense counsel's failure to object to Fox's testimony regarding the prices of the items listed on the purchase order he obtained from the Internet fell below an objective standard of reasonableness. The state used this information to prove the truth of the matter asserted, i.e., that the purchase

order was fictitious because the prices were unrealistic. The state did not introduce a hard copy of the Internet webpage containing the pricing information, nor did it lay a foundation to establish that the particular website is used and relied upon by the public or the trade for pricing information.

{¶ 25} We now address appellant's claim of ineffective assistance of counsel for failing to challenge false and misleading testimony. Specifically, defense counsel failed to challenge the testimony of Detective Brown relating to his conversation with Carolyn Jones, the contact person at Privacywear, who, according to the detective, was unable to provide any information that the purchase order was legitimate and the transaction was going to be completed. We also find that defense counsel's failure to challenge this testimony fell below an objective standard of reasonableness. Appellant maintains, and we agree, that the detective's testimony left the jury with the impression that Jones admitted that the purchase order was phony. However, the typewritten transcript of Detective Brown's November 2, 2005 telephone interview with Jones, which was included in the state's discovery response, discloses that Jones told Detective Brown that the invoice was okay, that she had spoken with Michael Fox in August, and that she had asked him whether he was going to factor the invoice and collect from Privacywear. Jones's statement that the invoice was okay was never disclosed to the jury.

{¶ 26} Having found that appellant has satisfied the first prong of *Strickland*, we must next determine whether appellant was prejudiced by defense counsel's failure to object and failure to challenge the aforementioned testimony. We find that he was so prejudiced. The state based its entire case for deception on its position that the use of the purchase order as security for the loan was a sham. Defense counsel's deficient performance resulted in the admission of inadmissible evidence establishing this essential fact. We conclude that there is a reasonable probability that the results of appellant's trial could have been different, but for counsel's performance. The other evidence adduced at trial was not sufficient to outweigh defense counsel's deficient performance.

{¶ 27} Appellant's first assignment of error is sustained.

## II

{¶ 28} In light of our disposition of appellant's first assignment of error, we find appellant's second assignment of error to be moot.

## III

{¶ 29} In his final assignment of error, appellant challenges his convictions as not supported by sufficient evidence and as against the manifest weight

of the evidence. In light of our disposition of appellant's first assignment of error, we find the portion of this assignment of error challenging the manifest weight of the evidence to be premature.

{¶ 30} Our standard of reviewing a claim that the verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 31} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the state has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.

{¶ 32} Based upon the evidence set forth above, we find that appellant's conviction was not based upon insufficient evidence.

{¶ 33} Appellant's third assignment of error is overruled.

{¶ 34} The judgment of the Licking County Court of Common Pleas is reversed, and the cause is remanded to that court for further proceedings according to this opinion and the law.

Judgment reversed
and cause remanded.

FARMER, P.J., and GWIN, J., concur.